# Matter of R-A-N-, Respondent

*Decided July 7, 2026*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) Conscription does not serve as a standalone basis for asylum in the absence of a nexus to a protected ground.

(2) Conscription that would require an alien to engage in inhuman conduct condemned by the international community constitutes persecution only when the conscription or required conduct is tethered to a protected ground. *Matter of A-G-*, 19 I&N Dec. 502, 506 (BIA 1987), clarified.

(3) International condemnation of the Russian military's actions is insufficient to render conscription persecutory; rather, the respondent must demonstrate that, if conscripted, he himself would necessarily be required to engage in inhuman conduct on account of a protected ground.

FOR THE RESPONDENT: Amir Naim, Esquire, Atlanta, Georgia

FOR THE DEPARTMENT OF HOMELAND SECURITY: Mary Ellen Withrow, Counsel

BEFORE: Board Panel: HUNSUCKER and GOODWIN, Appellate Immigration Judges. Concurring Opinion: MULLANE, Appellate Immigration Judge.

GOODWIN, Appellate Immigration Judge:

The Department of Homeland Security ("DHS") appeals from the Immigration Judge's decision, dated November 19, 2024, granting the respondent's application for asylum under section 208(b)(1)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1158(b)(1)(A) (2024). The respondent, a native and citizen of Russia, opposes the appeal. We received supplemental briefing from DHS, the respondent, and amici curiae.[1] Oral argument was presented in this case on February 10, 2026. We will sustain the appeal and remand the record to the Immigration Court.

The respondent seeks asylum and related relief because of his oppositional political views and fear of forced conscription in Russia. He

---

[1] We have accepted and considered the brief submitted by Connection e.V. and Russian America for Democracy in Russia as amici curiae.

testified that he fled to Turkey in October 2022 when military mobilization and conscription orders intensified in Russia.[2]  In March 2023, two men in government uniforms went to the respondent's registered address in Russia and asked his mother about his whereabouts.  The same men visited his mother a week thereafter, this time stating the respondent was subject to military service and required a medical examination in order to be deployed.  The respondent's mother was visited a third time, in October 2023, by city administrators who asked about his whereabouts.  Finally, in September 2024, military personnel visited the respondent's mother and gave her a summons stating the respondent was obligated to appear for a medical examination for purposes of military deployment.

The Immigration Judge determined that the respondent did not establish past harm rising to the level of persecution and, therefore, did not establish past persecution.  The Immigration Judge found the respondent has a subjective fear of future persecution due to his political opinion but determined such fear is not objectively reasonable.  The Immigration Judge found the respondent did not demonstrate the requisite nexus between the harm he fears and his political opinion or any other protected ground.  However, the Immigration Judge granted asylum on the basis that the respondent has a well-founded fear of persecution on account of conscription into an internationally condemned military.

To be eligible for asylum, an alien must establish that he is a "refugee" as defined in section 101(a)(42)(A) of the INA, 8 U.S.C. § 1101(a)(42)(A) (2024).  INA § 208(b)(1)(A), 8 U.S.C. § 1158(b)(1)(A); *Ponce v. U.S. Att'y Gen.*, 141 F.4th 1214, 1215 (11th Cir. 2025).  In relevant part, a "refugee" is an individual who is (1) outside the country of his nationality, (2) unable or unwilling to return to that country, and (3) unable or unwilling to avail himself of that country's protection, (4) because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.  INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A); 8 C.F.R. § 1208.13(b)(2)(i)(A) (2020).  Persecution on account of one of these statutorily protected grounds refers to persecution motivated by the victim's protected ground, not the persecutor's.  *INS v. Elias-Zacarias*, 502 U.S. 478, 482 (1992).  Further, this

---

[2]   At the merits hearing, DHS raised a firm resettlement bar argument as a result of the respondent's relocation to Turkey.  The Immigration Judge concluded that the respondent was not firmly resettled in Turkey because the residence permit he received placed "significant restrictions" on his residence.  DHS does not challenge this determination on appeal.  We, therefore, deem the issue waived.  *See Matter of P-B-B-*, 28 I&N Dec. 43, 44 n.1 (BIA 2020) (stating that arguments not raised on appeal are deemed waived).

nexus analysis requires the alien to provide direct or circumstantial evidence that the persecutor would be motivated by the alien's actual or imputed protected ground. *Id*. at 483.

At issue on appeal is whether conscription serves as a standalone basis for asylum in the absence of a nexus to a protected ground. We conclude that it does not.

The decision of the Supreme Court of the United States in *INS v. Elias-Zacarias*, 502 U.S. at 478, is instructive on this issue. In that case, the Court analyzed an alien's forced conscription claim in the context of nexus to his political opinion, not as a standalone claim. 502 U.S. 478, 482–83. Noting that the refugee definition in the INA "makes motive critical," the Court emphasized that the burden is on the alien to establish he would be persecuted "*because of*" his protected ground. *Id*. at 483. The parties have not pointed to any case in which asylum was granted without the applicant establishing a nexus to a protected ground. This includes *Mohammed v. U.S. Att'y Gen.*, 547 F.3d 1340 (11th Cir. 2008), on which the Immigration Judge relied to grant asylum.

The Board and several Federal circuit courts of appeals have long held that military conscription is not per se persecution. *See, e.g., Mekhoukh v. Ashcroft*, 358 F.3d 118, 126 (1st Cir. 2004) (noting that nations have the right to enforce laws of conscription, and normal penalties for evasion of military service generally are not considered persecution); *Matter of Vigil,* 19 I&N Dec. 572, 578 (BIA 1988) ("It is a long-established principle of international law that a sovereign government has the right to draft its citizens and maintain an army for the purpose of self-defense."); *Matter of A-G-*, 19 I&N Dec. 502, 506 (BIA 1987) ("We hold to the long-accepted position that it is not persecution for a country to require military service of its citizens.").

We have held that refusing military conscription may give rise to a claim of persecution in some very specific, exceptional circumstances, namely in those cases where a "disproportionately severe punishment would result on account of one of the five grounds enumerated in section 101(a)(42)(A)" of the INA, "or where the alien would necessarily be required to engage in inhuman conduct as a result of military service required by the government." *Matter of A-G-*, 19 I&N Dec. at 506. However, these exceptions do not create a standalone covered ground. These exceptions must still be tethered to one of the five grounds specified in the refugee definition: race, religion, nationality, membership in a particular social group, or political opinion. *See* INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). Absent a persecutory intent connected to a covered ground, a claim of forced conscription will not

support a grant of asylum. *See Matter of Canas*, 19 I&N Dec. 697, 708–11 (BIA 1988) (concluding that asylum was not warranted where a conscientious objector did not establish conscription laws were enacted or applied to only those with religious objections); *Matter of Vigil*, 19 I&N Dec. at 578-79 (conscription was not shown to be on account of one of the five protected grounds); *accord Matter of A-G-*, 19 I&N Dec at 506.[3]

These very rare circumstances are not present here because the Immigration Judge found, without clear error, that the respondent "does not have a well-founded fear of future persecution on account of a protected ground." Although the Immigration Judge went on to grant asylum finding that Russia's military is internationally condemned and that there is at least a ten percent likelihood that the respondent will be conscripted, on de novo review we conclude that the Immigration Judge's analysis is legally erroneous. Conscription is not a standalone, sixth covered ground in the INA. The respondent has not established that he is a refugee because he has not established a nexus to a protected ground.[4]

We acknowledge that the United States Court of Appeals for the Ninth Circuit has issued two unpublished decisions which suggest that a nexus to a covered ground is not required when considering the exception for those who would necessarily be required to engage in inhuman conduct. *See Razzouk v. Garland*, 845 F. App'x 575, 576 (9th Cir. 2021); *Cardoza-Herrera v. INS*, 67 F.3d 305 (9th Cir. 1995) (unpublished decision referenced in the Federal Reporter's "Table of Decisions Without Reported Opinions"). In these

---

[3] Federal circuit courts of appeals have held the same. *See, e.g.*, *Lopez Ordonez v. Barr*, 956 F.3d 238, 244 (4th Cir. 2020) (requiring nexus to a covered ground when alien who was conscripted into an internationally condemned military resisted participating in inhuman conduct); *Ghebrehiwot v. Att'y Gen. U.S.*, 467 F.3d 344, 353 n.7 (3rd Cir. 2006) (noting that conscription did not, by itself, constitute persecution on account of the alien's religion); *Pelinkovic v. Ashcroft*, 366 F.3d 532, 538–39 (7th Cir. 2004) (holding aliens did not show they would be punished more harshly on account of ethnicity for avoiding conscription); *Melkonian v. Ashcroft*, 320 F.3d 1061, 1068–69 (9th Cir. 2003) (addressing forced conscription on account of ethnicity and religion); *Alvarenga v. INS*, 9 F.3d 103 (5th Cir. 1993) (per curiam) (affirming determination that conscription was not on account of the alien's membership in a particular social group).

[4] The Immigration Judge's alternative determination that the respondent is eligible for asylum because he would be disproportionately punished if he refuses to serve in Russia's military is also in error because the Immigration Judge did not consider whether such punishment would occur on account of a protected ground. *See Matter of R-R-*, 20 I&N Dec. 547, 551 (BIA 1992) (requiring nexus to a protected ground for such claims). Draft evasion, particularly in time of war, is punished harshly by many countries, including the United States.

cases, the Ninth Circuit first determined there is no nexus for the severe punishment exception and then considered the inhuman conduct exception without mentioning nexus. The cases do not explicitly state, or explain how, a respondent is eligible for asylum or withholding of removal based on the inhuman conduct exception despite a finding of no nexus. The language in these two cases appears to arise from the wording employed in *Matter of A-G-*, 19 I&N Dec at 506, which could be read to require a nexus only as to the severe punishment exception. We now clarify that, under *Matter of A-G-*, the inhuman conduct exception must also be tethered to a covered ground, as conscription alone is not persecution, and without a covered ground an applicant does not meet the refugee definition required to be eligible for these forms of relief. Thus, conscription that would require an alien to engage in inhuman conduct condemned by the international community constitutes persecution only when the conscription or required conduct is tethered to a protected ground.

Accordingly, the Immigration Judge erred in determining that the respondent's conscription would be persecutory because the Russian military is "an internationally condemned military." International condemnation of the Russian military's actions is insufficient to render conscription persecutory; rather, the respondent must demonstrate that, if conscripted, he himself "would necessarily be required to engage in inhuman conduct" on account of a protected ground. *Matter of R-R-*, 20 I&N Dec. at 551 (citing *Matter of A-G-*, 19 I&N Dec. at 502).

The Immigration Judge cited *Mohammed v. U.S. Att'y Gen.*, 547 F.3d at 1346, which the respondent argues sets forth a different standard than *Matter of R-R-*, 520 I&N Dec. at 551. We do not agree that *Mohammed* or other case law within the United States Court of Appeals for the Eleventh Circuit, where this case arises, creates a different legal standard than *Matter of R-R-* and *Matter of A-G-*. *Mohammed* cites *Mekhoukh v. Ashcroft*, 358 F.3d at 126, for the proposition that being forced to join an internationally condemned military amounts to persecution. *Mohammed v. U.S. Att'y Gen.*, 547 F.3d at 1346. *Mekhoukh* summarizes its holding on that issue as requiring an alien to show that "if he returned to [his native country] he would be drafted, assigned to combat duty, and become *obligated* to commit human rights violations." 358 F.3d at 128 (emphasis added). The respondent's argument relies on a commonly used simplification of the concept that does not modify the full holding that conscription into an internationally condemned military is persecutory only if the alien would be required to engage in inhuman conduct. Indeed, *Mohammed* does not reach the latter part of the analysis because it relies on the alien's failure to meet his burden to prove that he would be forced to join the military. 547 F.3d at 1347.

743

We thus conclude that the Immigration Judge legally erred in determining that international condemnation of a government's military actions, or condemnation of some soldiers for inhuman acts, was sufficient to establish an exception to the general rule that conscription does not constitute persecution. Instead, the respondent is required to establish not only that he "would necessarily be required to engage in inhuman conduct (that is, conduct condemned by the international community as contrary to the basic rules of human conduct) as a result of military service required by the government" but also a nexus to a protected ground. *Matter of R-R-*, 20 I&N Dec. at 551. This the respondent did not do.

Based on the foregoing, the respondent has not established eligibility for asylum, and the Immigration Judge legally erred by treating conscription as a protected ground for asylum separate from race, religion, nationality, membership in a particular social group, and political opinion. *See* INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A); 8 C.F.R. § 1208.13(b)(2)(i)(A). The lack of a nexus to a protected ground renders the respondent statutorily ineligible for both asylum and withholding of removal under the INA. *See* 8 C.F.R. § 1208.16(b)(2) (2026); *see also, e.g.*, *Jathursan v. U.S. Att'y Gen.*, 17 F.4th 1365, 1375 (11th Cir. 2021) (describing how nexus issue impacts both asylum and withholding of removal). Because the Immigration Judge did not reach the respondent's alternative claim for protection under the regulations implementing the Convention Against Torture ("CAT"),[5] we will remand the record for adjudication of that claim.[6]

Accordingly, the following orders will be entered.

**ORDER:** DHS' appeal is sustained, and the Immigration Judge's November 19, 2024, decision granting asylum is vacated.

**FURTHER ORDER:** The record is remanded to the Immigration Court to adjudicate the application for protection under the regulations

---

[5] The Convention Against Torture and Other Cruel Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85 (entered into force for United States Nov. 20, 1994). 8 C.F.R. §§ 1208.16(c) , 1208.17 (2026); 8 C.F.R. § 1208.18(a) (2020).

[6] The respondent has also filed a motion to remand. The respondent's motion does not show clear error in the Immigration Judge's protected ground finding, nor otherwise rehabilitate the legal error in the Immigration Judge's determination that the respondent's conscription would constitute persecution. Thus, we deny the respondent's motion. Our remand is limited to the respondent's claim for CAT protection.

implementing the Convention Against Torture consistent with the foregoing opinion and for the entry of a new decision.


*CONCURING OPINION:*  Hugh G. Mullane, Appellate Immigration Judge

I concur in the result reached by the majority.  No party disputes the Immigration Judge's finding that respondent has not shown past persecution or a well-founded fear of persecution on account of his political opinion (the only asserted protected ground).  The Immigration Judge's legal error in this case was her failure to properly apply the nexus requirement as set forth in *INS v. Elias-Zacarias*, 502 U.S. 478 (1992).  In that case, the Supreme Court held:  "The ordinary meaning of the phrase 'persecution on account of . . . political opinion' in § 101(a)(42) is persecution on account of the *victim's* political opinion, not the persecutor's." *Id.* at 482.  The Immigration Judge's conclusion that respondent met his burden of proof by merely showing a fear of conscription in Russia is thus foreclosed by *Elias-Zacarias*.  I would reverse the grant of asylum on this basis alone and remand so respondent has an opportunity to make a claim for protection under the Convention Against Torture.